## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA       :

     **v.**                 :       **CRIMINAL NO. 04 - 14**

**JOHN RANSOME**           :

### ORDER

AND NOW, this     day of      , 2007, upon consideration of defendant John Ransome's Motion Pursuant to Title 28 U.S.C. § 2255, and the government's response thereto, it is hereby ordered that all legal challenges raised in the petition are denied. A certificate of appealablility is denied. It is further

ORDERED

that the defendant shall remain incarcerated with the Bureau of Prisons consistent with this Court's previous judgment and commitment.

BY THE COURT:

_____
HONORABLE ANITA B. BRODY
United States District Court

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 04 - 14** |
| **JOHN RANSOME** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
***PRO SE* MOTION UNDER 28 U.S.C. § 2255**
**TO VACATE, SET ASIDE, OR CORRECT A SENTENCE**

The United States of America, by and through its attorneys Patrick L. Meehan,

United States Attorney in and for the Eastern District of Pennsylvania, and John M. Gallagher,

Assistant United States Attorney for that District, responds to the Petitioner's *pro se* Motion

Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence as follows:

Defendant Ransome asserts four separate grounds in support of his habeas

petition.  Each of these claims are based, in some fashion, upon the incorrect premise that the

sentencing guidelines were improperly increased based on the district court's determination that

the firearm possessed by the defendant had an obliterated serial number.  The evidence at trial

and sentencing established that the serial number was indeed obliterated and, thus, it was proper

to add two levels when calculating the defendant's guidelines range.  However, the argument is

moot, because even the adjusted guideline range falls far short of the range established by the

defendant's status as an armed career criminal.

The defendant first claims, in sum, that the district court could not enhance his sentencing offense level based on a finding by a preponderance of the evidence that the firearm at issue had an obliterated serial number. The defendant contends that the <u>Booker</u> decision and its progeny require such a determination to be made by the jury beyond a reasonable doubt. The defendant is wrong as the case law is clear that the sentencing judge retains the authority to determine sentencing factors, such as an obliterated serial number, by a preponderance of the evidence. Moreover, as mentioned above, the defendant's sentence was dictated by the guidelines applicable to him as an armed career criminal and thus the two level enhancement had no effect upon his final guidelines range. This first argument is thus both without merit and moot.

In his second argument, the defendant claims that he has been sentenced for the offense of possessing a firearm with an obliterated serial number, 18 U.S.C. § 922(k), an offense for which he was never charged or convicted. However, the defendant was actually sentenced solely for possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1), the count of conviction. Because the district court found that the firearm had an obliterated serial number, his sentencing guideline range would have been enhanced had he not been an armed career criminal to whom a much higher guideline range applied. The defendant's claim that he has been sentenced for 18 U.S.C. § 922(k) is not true and, thus, is without merit.

The defendant's third claim is that he was denied effective assistance of counsel. He argues first, trial counsel was ineffective for failing to object to the enhancement for the

obliterated serial number.  However, counsel cannot be ineffective for failing to object to an enhancement that was lawful and proper.  Moreover, counsel's representation did not prejudice the defendant as the obliterated serial number enhancement did not increase his guideline range. Second, the defendant claims that his counsel was ineffective for failing to challenge evidence of his possession of the firearm.  This claim is plainly contradicted by the record, wherein defense counsel did offer the testimony and arguments, albeit discredited and rejected by the jury, that the defendant now claims were lacking.

        The defendant's final claim is that Amendment 506 to U.S.S.G. § 4B1.1 provides a basis for relief.  This argument fails, first, because § 4B1.1 applies to sentencing of a defendant with career offender status.  In the instant case, the defendant was sentenced pursuant to § 4B1.4, Armed Career Criminal status, which does not have a similar amendment.  Moreover, the defendant falsely represents the language of the cited amendment, adding words and reversing others to change the meaning of the amendment to better suit his argument.

        For these reasons and those stated below, the defendant's motion is devoid of merit and should be denied in its entirety.  Moreover, a certificate of appealability should not issue because the defendant has failed to make a substantial showing of a denial of any constitutional right.

WHEREFORE, it is respectfully requested that the defendant's *pro se* motion pursuant to 28 U.S.C. § 2255 be denied without a hearing, and further, that this Court make a finding that a certificate of appealability should not issue because the defendant has failed to make a substantial showing of the denial of a constitutional right.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney


_____

JOHN M. GALLAGHER
Assistant United States Attorney

4

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 2004-14 |
| JOHN RANSOME | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT
OF ITS RESPONSE TO DEFENDANT'S *PRO SE*
MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE OR CORRECT SENTENCE**

## I. **BACKGROUND**

A.    Procedural History

On December 16, 2003, a grand jury in the Eastern District of Pennsylvania returned an indictment of John Ransome, charging him with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and one count of possession of marijuana in violation of 21 U.S.C. § 844(a).  The defendant proceeded to trial, and on May 5, 2004, following a three-day trial, the jury found the defendant guilty of both charges.

The defendant was sentenced on January 25, 2005.  His base offense level for the violation of 18 U.S.C. § 922(g)(1) was calculated as level 24 pursuant to U.S.S.G. § 2K2.1(a)(2). This Court determined, by a preponderance of the evidence, that the firearm possessed by the defendant had an obliterated serial number and therefore the court increased the offense level by two points, pursuant to U.S.S.G. § 2K2.1(b)(4).  However, the Court also found that the defendant was an armed career criminal pursuant to 18 U.S.C. § 924(e), a finding not challenged in the defendant's petition, which established an offense level of 33, in accordance with U.S.S.G. § 4B1.4(b)(3)(B).

Despite a guidelines range of 235 to 293 months, the Court imposed a sentence of 200 months of imprisonment, a term of supervised release of five years, a fine of $1,500, and a special assessment of $125. The defendant nonetheless filed the instant petition alleging unfairness in his sentencing.

B.      Factual History

On August 16, 2003, at approximately 2:30 a.m., two police officers from the Plymouth Township Police Department responded to the area of East Ridge Pike and Fairfield Road in Montgomery County, in the Eastern District of Pennsylvania pursuant to a 911 call placed by a local resident reporting a car accident. Notes of Testimony ("N.T.") 5/3/04, p. 29, p. 30. Police Officer Joseph DiDonato, the first officer to arrive on the scene, observed the defendant getting into to a silver 1986 Ford sedan that was parked at the side of the road. N.T. 5/4/04,  p. 54, p. 56. The defendant attempted to drive away but was directed to stop by Officer DiDonato. N.T. 5/4/04, p. 54. Shortly thereafter, Police Officer Michael Capperella arrived at the scene. N.T. 5/4/04, p. 56. The officers observed significant fresh damage to the Ford including a twisted rear bumper, missing right brake light assembly and dents and scratches to the right rear quarter panel. N.T. 5/3/04, p. 38.

Officer Caparella asked the defendant if he had been in an accident, to which he replied, in substance, "No, I was driving along and the car broke down." N.T. 5/3/04, p 39. However, Officer Capperella located a right rear brake light assembly from a Ford vehicle lying next to a telephone pole approximately 300 feet from where the Ford was stopped. N.T. 5/3/04, p. 34, p. 35. The officer observed other crash debris strewn on the street between the telephone pole and the Ford sedan. N.T. 5/3/04, p. 40.

2

When the officers asked the defendant his name, he lied to them for the second time in those first few moments of their encounter when he falsely claimed that he was "Thomas Banks" born on April 3, 1961.  N.T. 5/3/04, p. 36, p. 37.  The defendant provided the officers with a Washington D.C. driver's license in the name of Thomas Banks and with the photograph of the defendant. N.T. 5/4/04, p. 56.  While the driver's license appeared legitimate, the officers later determined from the Washington D.C. Department of Motor Vehicles that the license was counterfeit and no such license existed.  A stipulation to that effect was entered into evidence at the criminal trial. N.T. 5/4/04,  p. 11.

As they spoke at the scene, Officer Capparella told the defendant that he detected a strong odor of alcohol on the defendant's breath.  N.T. 5/3/04, p. 40.  Officer Capparella also observed that the defendant was slurring his speech and had bloodshot eyes.  N.T. 5/3/04, p. 40, p. 41.  The officers suspected that the defendant was driving under the influence of alcohol. N.T. 5/3/04, p. 41.  Officer Capparella then asked the defendant to perform several field sobriety checks at the passenger side of the Ford sedan as it was on the opposite side from the flow of traffic. N.T. 5/3/04, p. 41.

During the sobriety tests, the defendant repeatedly looked away from Officer Capparella and stared intently into the passenger compartment of the Ford through the open front passenger window.  N.T. 5/3/04, p. 43,  p. 44.  According to Officer Caparella's testimony, the defendant repeated this action more than 10 times and up to as many as 20 times.  N.T. 5/3/04, p. 45.  Each time, the defendant broke his concentration from Officer Caparella and the field sobriety tests and stared into the front passenger compartment for several seconds.  N.T. 5/3/04, p.44.  Officer Capparella became so concerned by the defendant's unusual actions that he

3

stopped the testing to briefly shine his flashlight into the vehicle to ensure that there was no immediate danger.  N.T. 5/3/04, p. 45.  As Officer Capparella resumed the sobriety tests, the defendant stepped very close to the officer, nearly making contact with the officer and moving him backward away from the open passenger window.  N.T. 5/3/04, p. 46.  Officer Caparella several times instructed the defendant to step back and, at one point, Capparella had to physically push the defendant away from him.  N.T. 5/3/04, p. 47.

   The defendant was so determined to move Officer Caparella from his vantage point that he was willing to forgo a serious attempt at the field sobriety tests and bring himself in closer physical contact with the police officer who had already told him that he detected the smell of alcohol from The defendant's breath.  N.T. 5/3/04, p. 47.

   The defendant failed the sobriety tests and was placed under arrest for Driving Under the Influence of Alcohol.  N.T. 5/3/04, p. 47.  Officer DiDonato searched the defendant's person before placing him in the police car and recovered a small jar and a small bag containing a leafy substance later verified by laboratory testing to be approximately 2.5 grams of marijuana. N.T. 5/4/04, p. 60.

   As Officer DiDonato searched the defendant at the rear of the Ford sedan, Officer Capperella opened the door to that vehicle.  N.T. 5/4/04, p. 61.  He immediately observed the butt of a pistol sticking out approximately two to three inches from under the front driver's seat. N.T. 5/3/04, p. 50.  Officer Caparella called out "gun" to notify his partner.  Id.  Officer Caparella did not have to bend down or search the vehicle. N.T. 5/3/04, p. 51.  He saw the gun on the driver's side floor as soon as he opened the car door.  N.T. 5/3/04, p.50.  Officers Caparella and

DiDonato both testified that Caparella called out "gun" almost instantly after opening the car door.  N.T. 5/3/04, p. 50, N.T. 5/4/04, p. 61-62.

The gun was found in the exact location where the defendant had been sitting when he was approached by Officer DiDonato and directed to get out of the vehicle.  N.T. 5/3/04, p. 50.  It was in the same area into which the defendant had looked repeatedly and from where he sought to deny Officer Capparella the opportunity to look by physically backing the officer away from the passenger window.  N.T. 5/3/04, p. 44-45.  Officer Capperella picked up the gun and saw it was a Hi-Point, Model C, 9mm Luger semi-automatic handgun loaded with eight live rounds of ammunition.  N.T. 5/3/04, p. 51.

Officer Capperella also noticed the serial number had been scratched off the gun. N.T. 5/3/04, p. 54.  The gun was entered into evidence at the trial where the district court and the jury had the opportunity to physically inspect it.  N.T. 5/3/04, p. 51.  At the jury's request, a ruler was provided during deliberations so they were able to assess how clearly noticeable the gun was when sticking out approximately three inches from underneath the driver's seat.  N.T. 5/5/04, p. 25.

Once the defendant was transported to the police facilities, Officer DiDonato conducted a breath test of the defendant.  N.T. 5/4/04, p. 72.  His blood alcohol level was determined to be .104%, in excess of the .10% threshold then existing under Pennsylvania state law (Pennsylvania has since lowered the limit to .08%).  N.T. 5/4/04,  p. 63.  During arrest booking process, the defendant continued to lie about his identity and signed several police documents as "Thomas Banks," including the most basic of personal identifiers, his fingerprint card.  N.T. 5/4/04, p. 10.

The serial number on the handgun was later restored by Detective Leon Krebs of the Montgomery County Detective Bureau.  N.T. 5/4/04, p.106.

Clifton Reed of Philadelphia, Pennsylvania was identified as the owner of the Ford vehicle driven by the defendant.  N.T. 5/4/04, p. 75.  Reed testified at trial that he had loaned or rented his car to the defendant on two separate occasions within days of one another.  N.T. 5/4/04, p. 77.  On each occasion, the defendant paid $50 to Reed to use his car.  N.T. 5/4/04, p. 78.  The first time, the defendant rented the car in the evening and returned it early the next morning.  N.T. 5/4/04, p. 79.  The last time the defendant rented Reed's car was at approximately 10:00 P.M. on the evening of August 15, 2003, approximately 5 hours prior to the defendant's arrest.  N.T. 5/4/04, p. 81.  Reed also testified at trial that there was no gun in the car when he loaned it to the defendant.  N.T. 5/4/04, p. 84.  Reed had been using the car as an unregistered taxi cab and he explained in his testimony that he was steadfast about searching the car after passengers had been in it because he often found loose change and other inadvertent "tips" left in the car.  N.T. 5/4/04,  p. 85.

The defendant called a witness at trial, Frank Martin.  N.T. 5/4/04, p. 109.  Martin was incarcerated at the Montgomery County Correctional Facility since September 2003, the same facility where the defendant was being held since his arrest until the case was adopted for federal prosecution from the Montgomery County court system in February 2004.  N.T. 5/4/04, p. 115-116.  Martin testified that the gun found in the Ford sedan belonged to him.  N.T. 5/4/04, p. 114.

However, Martin's testimony contained numerous material inconsistencies. Martin testified that he met the defendant for the very first time in the afternoon at a club in Norristown, Pennsylvania on an unknown date in August 2003 when he was introduced to the defendant by a mutual friend whom he described simply as "Mike." N.T. 5/4/04, p. 121. At the time, Martin was unemployed and had no established residence. Id.

After drinking alcohol at the club with the defendant, they returned to the defendant's home in Norristown. N.T. 5/4/04, p. 123. On cross-examination, Martin admitted that, when questioned by a law enforcement agent one month prior to trial, he could not remember if the defendant lived in a private house, a row home or an apartment. N.T. 5/4/04, p.124. Martin testified that, later the same afternoon that he claimed he had first met the defendant, while drinking more alcohol at the defendant's house, Martin received a cell phone call from an individual that he refused to identify on the witness stand. N.T. 5/4/04, p. 125-26,129. The caller told Martin that he had a gun available for purchase in Philadelphia. N.T. 5/4/04, p. 126. Martin testified that he then asked the defendant if he could borrow his car to go to Philadelphia. N.T. 5/4/04, p. 127. Although he had just met Martin that day, Martin testified that the defendant agreed to loan him the car. N.T. 5/4/04, p. 127. Martin said he used the car to travel to Philadelphia where he purchased a gun for $150 in cash despite his dire economic situation at the time. N.T. 5/4/04, p. 127.

Martin testified that he then put the gun under the driver's seat of the car and drove back to the defendant's home in Norristown. N.T. 5/4/04, p. 114. On direct examination, Martin described a gun very similar to that at issue in the instant case. N.T. 5/4/04, p. 118-119. However, he admitted on cross-examination that when questioned one month prior to trial he

7

could not describe the gun nor could he even recall whether it was a revolver or a pistol.  N.T. 5/4/04, p. 28.  Martin said that he asked the defendant if he would give him a ride to the train station and the defendant did so.  N.T. 5/4/04, p. 129-130.  Martin testified that he forgot to retrieve the gun from under the seat when he parted the defendant's company.  N.T. 5/4/04, p. 130.  He also testified that he never returned to collect the gun from the defendant.  N.T. 5/4/04, p. 130-131.

Martin testified that he did not see the defendant again until they happened to meet while attending religious services at the Montgomery County Correctional Facility.  N.T. 5/4/04,  p. 116.  Martin said that it was during this chance encounter with the defendant that he realized that he was responsible for the gun found in the Ford sedan.  N.T. 5/4/04, p. 117.

Martin acknowledged in his testimony that he had discussed this case with the defendant.  N.T. 5/4/04, p. 133.  He said that the defendant was senior to him in their mutual religious order.  N.T. 5/4/04, p. 132.  Martin was also given a prestigious job as the chaplain's assistant that had been held by the defendant when they met in the jail.  Id.

Martin has a lengthy criminal history that directly relates to his veracity including convictions for robbery, receiving stolen property, three misdemeanor retail thefts and an additional felony retail theft conviction.  N.T. 5/4/04, p. 119-120.  However, Martin acknowledged that his claimed possession of the gun in this case was a first for him as his criminal history was entirely devoid of any arrests or convictions involving a gun whatsoever.  N.T. 5/4/04, p. 120-21.

Martin's testimony was rife with other inconsistencies. He claimed that he met the defendant and borrowed his car in the afternoon.  N.T. 5/4/04, p. 123.  However, Reed testified that he did not loan the car to the defendant until 10:00 P.M. on the evening prior to his arrest and approximately five hours prior to the defendant's encounter with the Plymouth Township police officers.  N.T. 5/4/04, p. 81.  The Court and the jury had the opportunity to observe Mr. Martin's testimony.  His body language and low tone of voice did not convey confidence in the words he was speaking.  Mr. Martin had to be asked numerous times by the Court and both counsel to speak louder.  N.T. 5/4/04, p. 76, p.126.  The jury's verdict certainly demonstrated the credibility they assigned to Mr. Martin's testimony.

## II.  **ARGUMENT**

The claims made by the defendant are completely devoid of merit.  He complains that he has been harmed by this Court's determination that the firearm that he possessed had an obliterated serial number and by the resulting increase of his offense level from 24 to 26.  The defendant's argument disregards the fact that, because he had more than three prior convictions for violent felonies (see presentence report at 3), he is classified as an "armed career criminal" as defined by 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4.  Pursuant to § 4B1.4(b)(3)(B), the resulting offense level score was 33, with or without the two point increase the defendant now contests. The guidelines under which he was sentenced were unaffected by the obliterated serial number enhancement.  Therefore, that enhancement did not and could not have affected the defendant's sentence, much less violated his rights.

9

A.    <u>Defendant's Sixth Amendment right to a jury trial was not violated by the enhancement</u>

The defendant's first claim is that this Court violated his Sixth Amendment right to a jury trial by applying the two level enhancement for an obliterated serial number.  He argues that by using a preponderance of the evidence standard to determine the firearm had an altered or obliterated serial numbers, the Court violated the rulings of <u>Booker</u> and <u>Blakely</u>. (Def's Mot. at 6.)  However, it has been established that the sentencing judge retains the authority to determine sentencing factors, such as the obliterated serial number, by a preponderance of the evidence.

The Third Circuit has clearly and recently pronounced that "judicial fact finding in the course of selecting a sentence within the permissible range does not offend the Fifth and Sixth Amendment rights to a jury trial and proof beyond a reasonable doubt."  <u>United States v. Grier</u>, 475 F.3d 556, 562 (3d Cir. 2007).  Far from requiring that highest standard of proof, the Court of Appeals has established that "district courts should make factual findings by a preponderance of the evidence." <u>Id.</u> at 561.

In <u>Grier</u>, the defendant pled guilty to being a convicted felon in possession of a firearm, 18 U.S.C. § 922(g)(1), after he was involved in an altercation during which he shot at another individual.  475 F.3d at 559.  The presentence report in that case assessed a four-level enhancement under U.S.S.G. § 2K2.1(b)(5) for the firearm having been used in connection with another felony, which was aggravated assault under Pennsylvania law.  <u>Id.</u>  The district court found by a preponderance of the evidence that Grier had in fact committed the felony, instead of a misdemeanor charge suggested by the defense.  <u>Id.</u> at 560.  As a result, the recommended imprisonment range under the guidelines increased from 85-105 months to 120-150 months.  After a two point reduction, Grier's final guideline range was 100-120 months.  <u>Id.</u>  The district

10

court sentenced grier to 100 months imprisonment, within the guidelines range, and most importantly, below the statutory maximum of 10 years. <u>Id.</u> at 561. On appeal, Grier argued that the enhancement violated his right to a jury trial since the finding that he had committed aggravated assault increased his minimum sentence, and was made only by a preponderance of the evidence. The Third Circuit rejected Grier's claim and held that "the right to proof beyond a reasonable doubt does not apply to facts relevant to enhancements under the advisory Guidelines range." <u>Id.</u> at 565.

Another recent case with facts even closer to the instant case is <u>United States v. Johnson</u>, 219 Fed.Appx. 147 (3d Cir. March 8, 2007)(not precedential), where the defendant pled guilty to being a felon in possession of a firearm. "Johnson did not admit the firearm's serial number had been defaced." <u>Id.</u>, at 149. Nonetheless, the presentence report indicated, and the judge found by a preponderance that the serial number had been obliterated, and Johnson's guidelines range increased to 100-120 months. Over Johnson's objection to the preponderance standard of proof used, the district court sentenced him to 100 months, which was within the guidelines and below the statutory maximum. <u>Id.</u> at 150. On appeal, the Third Circuit followed its ruling in <u>Grier</u> and held that facts a judge determines by a preponderance of the evidence can permissibly be used to increase a defendant's penalty, as long as the sentence remains below the statutory maximum assigned to the offense.

Therefore, the district court continues to make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the <u>Booker</u> decision. <u>See also</u> <u>United States v. Giaquinto</u>, 441 F.3d 195, 196 (3d Cir. 2006) (determine relevant conduct by a preponderance of the evidence).

11

As discussed above, the defendant qualified as an Armed Career Criminal, and was thus sentenced pursuant to 18 U.S.C. § 924(e).  Consequently, his conviction for possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1), carried a mandatory minimum sentence of 15 years, and a maximum of life imprisonment.  United States v. Williams, 892 F.2d 296, 304 (3d Cir. 1989), ("When Congress provided for 'imprisonment of not less than 15 years,' it meant a maximum of life").  The guidelines produced a recommended range of 235-293 months imprisonment. (Presentence report at 10.)  This Court made a downward departure and sentenced the defendant to 200 months. Since that penalty is less than the statutory maximum of life imprisonment, the Court had been authorized by the jury's verdict to impose it, and any sentencing factors that contributed to it could have been determined by a preponderance of the evidence without violating of the defendant's Sixth Amendment right to trial by jury.

B.    Defendant's due process rights were not violated

The defendant's second basis for relief is his claim that this Court violated his due process rights by sentencing him for a crime for which he was not charged or convicted. The defendant argues that by applying the two level enhancement, he was essentially penalized for the offense of possessing a firearm with altered or obliterated serial numbers, 18 U.S.C. § 922(k). While the defendant is correct that he was never charged with or convicted of § 922(k), he is incorrect in stating that he has been sentenced for that crime.  The offense of possessing a firearm with a defaced serial number is an offense separate than the charged offense of felon in possession of a firearm.  However, the existence of an obliterated serial number is also a permissible sentencing enhancement for other firearm convictions.  It was that Sentencing Guidelines enhancement, not a separate sentence for § 922(k), that was imposed upon the

12

defendant.  Therefore, this Court did not violate the defendant's right to due process.

In Grier, the Third Circuit stated that the distinction between sentencing factors and independent offenses "does not depend on whether facts in question can be described as a separate offense."  Grier, at 567.  The Court went on to note that "the guidelines were clearly intended by Congress to operate as sentencing factors," and "facts relevant to application of the guidelines … do not constitute elements of a crime."  Id.  The Court reasoned that this is true precisely because the factors within the guidelines do not increase the maximum penalty to which a defendant is exposed.  Id.

The Third Circuit has recently upheld the use of "obliterated serial number" as a guidelines enhancement.  See Johnson, 219 Fed. Appx. at 151.  It is a duly enacted provision in U.S.S.G. § 2K2.1(b)(4), and not affected by the due process requirements of the U.S. Constitution.  The defendant complains he was not put on notice that he was subject to punishment for obliterated serial numbers on the firearm.  Def's Mot. at 6a.  Yet, such notice is not necessary.  "The guidelines require that all facts relevant to sentencing be found by a judge based on information presented during a post-trial hearing." Grier, at 563.

The defendant was convicted of violating 18 U.S.C. § 922(g)(1) by a jury of his peers.  Since he was classified as an Armed Career Criminal, this Court was well within its authority to sentence him to a prison term up to and including the duration of his life, pursuant to 18 U.S.C. § 924(e).  "Once a jury has found a defendant guilty of each element of an offense beyond a reasonable doubt, he has been constitutionally deprived of his liberty and may be sentenced up to the maximum authorized under the United States Code." Id. at 561.  The two point enhancement did not bring the sentence beyond the properly calculated guideline range,

13

much less the statutory maximum.  Therefore, the finding that the firearm had obliterated serial numbers was not a separate element or offense, and his being penalized for it was not a violation of due process.

C.    The defendant was not deprived of his right to effective assistance of counsel

The defendant claims that his Constitutional right to counsel was violated when his lawyers did not object to the Court's two point enhancement for the obliterated serial numbers, and for failing to challenge that the firearm did, in fact, belong to the defendant.  Def.'s Mot. at 6.  This argument lacks merit, first, because any objection to the Court's guideline determination would have failed.  Second, his claim fails because the defendant's attorney did indeed present testimony and argument that the firearm did not belong to the defendant, which was heard and then rejected by the jury.

Ineffective assistance of counsel claims are governed by the rule in Strickland.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Strickland v. Washington, 466 U.S. 668, 685 (1984).  The Court provided a two pronged test.  It focuses first on whether counsel was deficient, and second on whether the defendant was prejudiced by the inadequate performance.  To satisfy the first part, the defendant must demonstrate that the attorney "made errors so serious that he or she was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687.  In assessing those errors, a court should use a standard of "reasonableness under prevailing professional norms."  Id. at 688.  When a defendant makes a sufficient showing for this first step he must then "show that there is a reasonable probability that, but for counsel's unprofessional

14

errors, the result of the proceeding would have been different." Id. at 694.

1.     Defense counsel did not err by failing to object to the obliterated serial

number enhancement

_____As discussed above, there is no legal basis for the defendant's claim that this

Court improperly determined that the firearm had an obliterated serial number.  It is well settled

law that counsel is not ineffective for failing to advance an argument which is not generally

accepted.  See, e. g., Smith v. Murray, 477 U. S.527, 535-36 (1986); Duncan v. Morton, 256 F.3d

189, 202-03 (3d Cir. 2001); Pollard v. White, 119 F.3d 1430, 1436 (9th Cir. 1997).  Therefore,

the defendant's claim that his counsel was ineffective for failing to present this argument is

illogical and without merit.

2.     Defense counsel did offer the evidence that the defendant claims was

improperly omitted

The defendant further argues that his counsel was ineffective for failing to

challenge evidence that the firearm did, in fact, belong to him.  This argument is belied by the

record.  At trial, the defense presented testimony from Frank Martin.  As discussed above, this

witness claimed that on the day of the defendant's arrest he had used the car, in which the

defendant was arrested.  Martin testified that he purchased a firearm on that day and

inadvertently left it in the vehicle.  This witness attempted to provide the defense with evidence

that the firearm did not belong to the defendant.  However, several inconsistencies in Martin's

story were elicited on cross-examination.  The testimony was admitted into evidence and heard

by the jury.  Notwithstanding the testimony of the defendant's witness, the jury convicted the

defendant of possessing the firearm.

15

Defense counsel made an effective effort to challenge the evidence that the defendant possessed of the firearm found in his vehicle. The performance of his attorney was well within the standard of "professional norms," and the failure of the jury to credit the testimony offered does not diminish the effectiveness of counsel's assistance.

D.    Defendant's motion misrepresents the language of the U.S.S.G. Amendment that he erroneously claims as a basis for relief

The defendant's final claim is that the sentence imposed by this Court was in violation of amendment 506 to U.S.S.G. § 4B1.1. It should be noted at the outset that the defendant was not sentenced under § 4B1.1, which applies to career offenders. The defendant's criminal history qualified him as an armed career criminal, and he was thus subject to the provisions of U.S.S.G. § 4B1.4 with respect to which amendment 506 is irrelevant. In addition to involving an inapplicable amendment, the defendant misstated the text of this irrelevant amendment to completely change its meaning.

In Ground Four of his motion, the defendant restates amendment 506 to §4B1.1 to read:

> [The] Offense Statutory Maximum, for the purposes of this guideline refers to the maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or controlled substance offense not including any increase in the maximum ter [sic] under the sentencing enhancement provisions are contained…For example, where the statutory maximum term of imprisonment is 21 U.S.C. § 841 (1) (C) is increased from twenty years to thirty years because the defendant has one or more qualifying prior drug convictions, the Offense Statutory Maximum for the purposes of this guideline it [sic] twenty years and not thirty years.

16

Def.'s Mot. at 7.  This creative rendition of the amendment is incorrect in several crucial respects.  The accurate version of the text is as follows:

> "Offense Statutory Maximum," for the purposes of this guideline, refers to the maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or controlled substance offense, including any increase in that maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record (such sentencing enhancement provisions are contained, for example, in 21 U.S.C. § 841(b)(1)(A), (B), (C), and (D)). For example, in a case in which the statutory maximum term of imprisonment under 21 U.S.C. § 841(b)(1)(C) is increased from twenty years to thirty years because the defendant has one or more qualifying prior drug convictions, the "Offense Statutory Maximum" for that defendant for the purposes of this guideline is thirty years and not twenty years.

U.S.S.G. § 4B1.1.  The version of the amendment given by the defendant inserts the word "not" to change the sentence "including any increase in the maximum term" to "*not* including any increase in the maximum term."  He also reverses two words in the final sentence to better support his argument, such that it reads "Offense Statutory Maximum for the purposes of this guideline is twenty years and not thirty years" instead of the true version which reads, "Offense Statutory Maximum for that defendant for the purposes of this guideline is thirty years and not twenty years."

Notwithstanding the defendant's misrepresentation of the amendment, that amendment does not apply in the section under which he was actually sentenced. There are no grounds for relief in the defendant's fourth claim.

17

### III.    Conclusion

The defendant's petition is devoid of factual and legal merit.  It should be denied in its entirety without the necessity of a hearing.  Furthermore, a certificate of appealability should be denied.

The district court is given discretion in determining whether to hold an evidentiary hearing on a prisoner's motion under section 2255.  Government of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir.1989).  In exercising that discretion, the court must determine whether the petitioner's claims, if proven, would entitle him to relief and then consider whether an evidentiary hearing is needed to determine the truth of the allegations.  See Government of the Virgin Islands v. Weatherwax, 20 F.3d 572, 574 (3d Cir.1994).

Accordingly, a district court may summarily dismiss a motion brought under section 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.' " United States v. Nahodil, 36 F.3d 323, 326 (3d Cir.1994) (quoting United States v. Day, 969 F.2d 39, 41-42 (3d Cir.1992)); Forte, 865 F.2d at 62.

The defendant's petition offers no more than a laundry list of perceived slights devoid of factual support or any offering of how the defendant was prejudiced. "(B)ald faced assertions and conclusory allegations do not provide sufficient ground to warrant the state ... to require an evidentiary hearing." Zettlemoyer v. Fulcomer, 923 F.2d 284, 300 (3d Cir.1991).

18

Even when assuming the accuracy of the defendant's factual claims, in those very few instances where the defendant offers any factual basis for his claims, the defendant's petition lacks any issue where an evidentiary hearing is required to expand upon the existing record and the motions of the parties.

The government further requests that the Court deny the defendant a certificate of appealability on the grounds that the defendant's petition fails to establish "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Section 2253 provides that an appeal may not be taken from "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" or "the final order in a proceeding under section 2255" unless a certificate of appealability is issued. 28 U.S.C. 2253(c)(1)(A), (B); see Fed. R. App. P. 22(b)(1). The certificate requirement is a "jurisdictional prerequisite" to review by the court of appeals. Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To obtain a certificate of appealability under Section 2253(c), the defendant must make "a substantial showing of the denial of a constitutional right" on each issue he seeks to appeal. The reference to a "constitutional" right in Section 2253(c)(2) restricts appellate review to constitutional claims, rather than claims based on another source of federal law, such as a statute, rule, or sentencing guideline. See United States v. Cepero, 224 F.3d 256, 262-267 (3d Cir. 2000).

19

When granted, a certificate of appealability is granted only for particular issues, not an entire appeal.  See 28 U.S.C. § 2253(c)(3) (Certificate of Appealability "shall indicate which specific issue or issues satisfy the showing required by paragraph (2)").  The scope of review on appeal is limited to the issues specified in the certificate.

The Supreme Court has held that when a district court rejects a prisoner's constitutional claim on the merits, the prisoner is entitled to a certificate of appealability only if he shows that "reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong."  529 U.S. 473, 484 (2000); see Miller-El v. Cockrell, 537 U.S. 322, 338 (2003).

In the instant case, the defendant argues that he was offended by the district court's proper use of sentencing authority.  He then bootstraps an argument of ineffective assistance by claiming his counsel was ineffective for failing to challenge the lawfully exercised authority of the court.  The defendant does not, and can not, offer any factual basis nor any prejudice suffered on which a debatable constitutional issue could rest.

20

For each of the aforementioned reasons, the government respectfully requests that the Court deny each of the grounds in the defendant's petition for habeas relief pursuant to 28 U.S.C. § 2255.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney


/John M. Gallagher
JOHN M. GALLAGHER
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Government's

Response to Defendant's Pro Se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside,

or Correct Sentence has been served by me this date, by first class mail, postage

prepaid, upon:

        John D. Ransome
        Reg. No. 01194-103
        USP Canaan
        P.O. Box 300
        Waymart PA 18472

        /John M. Gallagher
        JOHN M. GALLAGHER
        Assistant United States Attorney

DATE: August 14, 2007

22